FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
★ MAR 03 2017 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ALLAN CALIZAIRE,

        Plaintiff,

-against-

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC., DEUTSCHE BANK
NATIONAL TRUST COMPANY, and OCWEN
LOAN SERVICING LLC,

        Defendants.
------------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
14-CV-1542 (CBA) (SMG)

**AMON, United States District Judge:**

Plaintiff Allan Calizaire, proceeding pro se, brings this action against Mortgage Electronic Registration Systems, Inc. ("MERS"); Deutsche Bank National Trust Company, as Trustee for the Pooling and Servicing Agreement dated as of November 1, 2006 Securitization Asset Backed Receivables LLC Trust 2006-FR4 ("Deutsche Bank"); and Ocwen Loan Servicing, LLC ("Ocwen") (collectively, "defendants").[1] He alleges a range of wrongdoing by defendants in connection with the transfer of his mortgage and subsequent foreclosure; some of his claims attack the mortgage foreclosure proceedings directly, while others allege torts arising from those proceedings. The Court now considers defendants' motion to dismiss Calizaire's varied state law claims. For the reasons set forth below, the motion to dismiss those claims is granted.

## BACKGROUND

The Court assumes familiarity with the facts and background of this case, as set forth in the earlier Memorandum and Order dismissing Calizaire's federal law claims, (see D.E. # 24), and only recounts those facts relevant to the instant motion to dismiss. Calizaire defaulted on a

---

[1] Calizaire named Fremont as a defendant in his original complaint, but as explained in the Court's earlier Memorandum and Order dismissing Calizaire's federal law claims, Calizaire's actions subsequent to removal indicate that he is not pursuing claims against Fremont. (See D.E. # 24 n.6.)

1

mortgage, and defendant Deutsche Bank subsequently initiated foreclosure proceedings against Calizaire in New York Supreme Court; these proceedings are still pending. See Deutsche Bank v. Calizaire, Index No. 6410/2013 (N.Y. Sup., Kings Cty). Calizaire thereafter filed this action, also in state court, and defendants removed it to this Court.

Upon removal by defendants, Calizaire filed supplemental papers, which this Court has construed as an amended complaint.[2] (See Am. Compl.) Calizaire's amended complaint raised federal claims under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., and the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601. (See id. at 14–16.) Calizaire also asserted numerous state law claims in his original and amended complaints. Although his filings are often unclear, it appears that almost all of Calizaire's state law claims stem from his assertions that the assignment of his mortgage to Deutsche Bank was invalid for a number of reasons, all of which render the state foreclosure proceeding commenced by Deutsche Bank invalid. (Compl. at 2, 16; D.E. # 20 ("Pl. Opp.") at 1 (arguing that Deutsche Bank had "no authority to bring about the foreclosure action because [it] is not the original Lender on the promissory note.").) On this basis, Calizaire asserts claims for damages for wrongdoing in connection with the foreclosure proceeding, including: (1) breach of contract, (Compl. ¶¶ 34–38); (2) negligence, (id. ¶¶ 39–44); (3) breach of the covenant of good faith and fair dealing, (id. ¶¶ 54–58); (4) breach of fiduciary duty, (id. ¶¶ 59–68); (5) "wrongful foreclosure," (id. ¶¶ 45–50); (6) fraud, (Am. Compl. ¶¶ 80–81); (7) intentional infliction of emotion distress, (id. ¶¶ 18–19); and (8) unjust enrichment, (Compl. ¶¶ 51–52). He further requests the following injunctive and declaratory relief: (1) the Court "set aside" the foreclosure, (id. ¶¶ 69–75); (2) the Court "set aside"

---

[2] Because Calizaire proceeds pro se, this Court considers both his original and his amended complaints together. See Little v. City of New York, 13-CV-3813(JGK), 2014 WL 4783006, at *1 (S.D.N.Y. Sept. 25, 2014) ("Because the plaintiff is proceeding pro se, the Court will consider the Original Complaint and the Amended Complaint together as the operative pleading.")

the sale of the subject property, (id. ¶¶ 76–81); (3) quiet title, (id. ¶¶ 89–93; Am. Compl. ¶¶ 92–99); and (4) a "judicial declaration determining the respective rights and obligations of the parties" with respect to the assignment of the mortgage, (Am. Compl. ¶¶ 22–27).

In May 2014, defendants filed a motion to dismiss all of Calizaire's claims. (D.E. # 14.) On February 27, 2015, this Court dismissed Calizaire's federal law claims as time-barred, but declined to exercise supplemental jurisdiction over his state law claims. (D.E. # 24 at 16.) Instead, the Court asked defendants to provide additional information on the citizenship of defendant Ocwen to establish whether there is diversity of the parties. (Id.) Defendants have demonstrated diversity and renewed their motion to dismiss Calizaire's state law claims. (D.E. # 26.) Calizaire has filed a response to defendants' motion to dismiss, (see D.E. # 28), but his entire submission focuses on his objections to having this action removed from state court.

On May 18, 2016, the Court entered an Order to Show Cause. (D.E. # 29.) The Court noted that all of Calizaire's state law claims stem from the foreclosure proceedings initiated against him in state court by Deutsch Bank—proceedings that still appear to be pending. (Id. at 3.) The Court reasoned that although neither party moved the Court to abstain on any claims in this case, the Court may do so sua sponte if circumstances require. (Id. at 4 (citing Bellotti v. Baird, 428 U.S. 132, 143 n.10 (1976)). Accordingly, the Court ordered the parties to show cause, in writing, within thirty days why the abstention doctrine should not be applied to dismiss some or all of Calizaire's remaining claims. (Id.) Calizaire filed a response to the Court's Order to Show Cause

on June 2, 2016, but his response does not address abstention, instead offering general arguments why his case should not be dismissed. (D.E. # 30.)

## DISCUSSION

### I. Abstention

Here, there is a parallel state court proceeding—Deutsche Bank's foreclosure proceedings against Calizaire in state court—which invites an abstention analysis. Abstention is a judicially created doctrine born out of the notion that even where "a federal equity court does have jurisdiction of a particular proceeding," it may abstain from exercising that jurisdiction out of "proper regard for the rightful independence of state governments in carrying out their domestic policy." Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 724 (1996) (internal quotation marks omitted). Because abstention concerns the Court's jurisdiction, the Court will address it as a threshold issue. See Arar v. Ashcroft, 532 F.3d 157, 168 (2d Cir. 2008) ("Determining the existence of subject matter jurisdiction is a threshold inquiry and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." (internal citations and quotation marks omitted)).

The abstention doctrine set forth in Younger v. Harris, 401 U.S. 37, 91 (1971), and its progeny preclude federal courts from interfering with ongoing state proceedings. As the Second Circuit explained, "[t]he defining feature of Younger abstention is that even though either a federal or a state court could adjudicate a given claim, when there is an ongoing state proceeding in which the claim can be raised, and when adjudicating the claim in federal court would interfere unduly with the ongoing state proceeding, the claim is more appropriately adjudicated in state court." Kirschner v. Klemons, 225 F.3d 227, 236 (2d Cir. 2000).

In Sprint Communications, Inc. v. Jacobs, 134 S.Ct. 584 (2013), the Supreme Court held that the Younger doctrine applies only to three classes of state court proceedings: (1) "state criminal prosecutions," (2) "civil enforcement proceedings," and (3) civil proceedings that "implicate a State's interest in enforcing the orders and judgments of its courts." Sprint Comm'cns, Inc., 134 S.Ct. at 588 (internal quotation marks omitted); see id. at 591 ("We have not applied Younger outside these three 'exceptional' categories, and today hold . . . that they define Younger's scope.").

Here, since the underlying state court case is not a criminal prosecution or a civil enforcement proceeding, the Court must consider whether it is a "civil proceeding that implicates a State's interest in enforcing the orders and judgments of its courts," id. at 588, and finds that it is. Calizaire seeks injunctive and declaratory relief relating the same property that is the subject matter of the underlying foreclosure action in state court. Furthermore, Calizaire's claims ask this Court to interfere with ongoing state court proceedings by setting aside foreclosure proceedings and the sale of the subject property,[3] and determining the rights and obligations of the parties with respect to the subject property currently under the jurisdiction of the state court. Thus this case falls within the third category of proceedings identified by the Supreme Court as appropriate for abstention. See, e.g., Wenegieme v. US Bank Nat'l Ass'n, No. 16-CV-2634 (AMD), 2016 WL 3348539, at *2 (E.D.N.Y. June 9, 2016) (holding that Sprint applies where plaintiffs seek injunctive relief relating to the same property that is the subject matter of an action pending in state court); Abbatiello v. Wells Fargo Bank, N.A., No. 15-CV-4210 (SJF), 2015 WL 5884797, at *4 (E.D.N.Y. Oct. 8, 2015) (same); Clark v. Bloomberg, No. 10-CV-1263 (JG), 2010 WL 1438803, at *2 (E.D.N.Y. Apr. 12, 2010) (finding that the Younger abstention doctrine barred plaintiff's

---

[3] The Court notes that Calizaire's pleadings do not allege that there has been a sale of the subject property.

5

"claims to enjoin the foreclosure action and the eviction proceedings" where the state court actions were pending); see also Taylor v. Jaquez, 126 F.3d 1294, 1297 (10th Cir. 1997) (emphasizing the "important state interest" in "the enforcement of its method of registering good title to privately owned lands within the state"). For these reasons, the Court declines to exercise jurisdiction over Calizaire's claims for injunctive and declaratory relief.

The abstention principle established in Younger v. Harris does not require dismissal of Calizaire's claims for damages. Because Younger abstention focuses primarily on federal courts interfering with and disrupting ongoing state proceedings, the Second Circuit has held that abstaining from claims for money damages is inappropriate. See Kirschner, 225 F.3d at 238 ("[W]e hold that Younger abstention is not appropriate with respect to Kirschner's claim for money damages under § 1983 . . . because it is a claim for money damages and not for declaratory or injunctive relief."). The Court therefore has subject matter jurisdiction over Calizaire's claims for damages and declines to apply the Younger abstention doctrine to these claims. The Court will accordingly consider defendants' arguments to dismiss these remaining claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II. Sufficiency of the Pleadings

### A. Standard of Review

To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the

grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal quotation marks, citations, and alterations omitted). Accordingly, in determining whether a claim has "facial plausibility," a court accepts all factual allegations as true, but does not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." Iqbal, 556 U.S. at 678. "'[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct,' . . . dismissal is appropriate." Starr v. Sony BMG Music Entm't, 592 F.3d 314, 321 (2d Cir. 2010) (quoting Iqbal, 556 U.S. at 679).

The submissions of a pro se litigant "must be construed liberally and interpreted to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted); see also Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) ("Even after Twombly . . . we remain obligated to construe a pro se complaint liberally."). A pro se plaintiff must nonetheless "plead facts sufficient to state a claim to relief that is plausible on its face." Teichmann v. New York, 769 F.3d 821, 825 (2d Cir. 2014) (quoting Iqbal, 556 U.S. at 678) (internal quotation marks omitted).

### B. Fraud and Intentional Misrepresentation

Calizaire alleges "fraud and intentional misrepresentation" against all defendants, (Compl. at 6), claiming that "[d]efendants have willfully concealed many facts . . . especially with regard to the loan modification plan." (Id. ¶ 29.) More specifically, Calizaire alleges that he "was not informed by the Defendants that there are remedies available to them before the commencement of the foreclosure proceedings." (Id. ¶ 30.) Calizaire then extends these allegations in his amended complaint, claiming that the mortgage itself was issued "with motive to defraud the Plaintiff."

(Am. Compl. ¶ 79.) He also argues that "the alleged trustee has committed fraud upon all parties by allowing a qualified endorsement to deprive the parties of their rights." (Id. ¶ 35.)

Under New York law, to show fraud a plaintiff must demonstrate that "(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." Wall v. CSX Transp., Inc., 471 F.3d 410, 415–16 (2d Cir. 2006) (citation omitted). It is well-settled that allegations of fraud must meet a "heightened pleading standard." Rombach v. Chang, 355 F.3d 164, 167 (2d Cir. 2004). Under Federal Rule of Civil Procedure 9(b), a plaintiff must "state with particularity the circumstances constituting fraud or mistake." For example, a "plaintiff must allege specific facts as to the fraud, including the misleading statements, speaker, time, place, individuals involved, and specific conduct at issue." Johnson v. Nextel Commc'ns, Inc., 660 F.3d 131, 143 (2d Cir. 2011).

Calizaire has not met the heightened pleading standard for fraud. To the extent he claims the defendants provided inadequate information, the pleadings omit the requisite level of specificity. See Fed. R. Civ. P. 9(b). Calizaire does not describe allegations that implicate all defendants, how the omission of information amounted to a material misrepresentation, or in what way Calizaire relied on that representation to his detriment. Similarly, to the extent Calizaire argues that "the alleged trustee committed fraud upon all parties by allowing a qualified endorsement to deprive the parties of their rights," (Am. Compl. ¶ 35), he fails to provide any reasonably specific explanation of what this allegation means or why it constitutes fraud. Calizaire claims only that "the alleged trustee failed in the fiduciary duties . . . by allowing the qualified endorsement to be added to the alleged Note." (Id. ¶ 34.) This allegation is opaque to the Court

and is deficient under Rule 9(b) because it fails to describe why any of the four elements of fraud are satisfied.[4] Calizaire's claims of fraud are therefore dismissed.

### C. Breach of Contract

Calizaire alleges that all of the defendants breached a contract—specifically because they "failed to perform the promised services" and "breached one or more provisions under the subject agreements and contracts." (Compl. ¶ 35.) Under New York law, the elements of a breach of contract claim include: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996).

Here, Calizaire merely states that "the defendant's conduct was a substantial factor in causing the plaintiff irreparable harm in terms of depriving him from other modus operandi to set aside foreclosure or loan modification by which they had breached the terms of the contract." (Compl. ¶ 36.) However, Calizaire does not identify which agreements were breached by this conduct.[5] Even if the Court assumes that Calizaire's breach of contract claims arise under the mortgage, not all of the defendants are party to the mortgage, and Calizaire cannot allege that he has adequately performed under the mortgage given that he is in default. Additionally, although

---

[4] To the extent Calizaire seeks to claim fraud with respect to the issuance of the mortgage, (see Compl. ¶ 6), he raises a claim against a party that has not been involved in this suit, (see supra n.1). That claim is also likely time-barred. Calizaire secured the loan on May 23, 2006, (D.E. # 24 at 1), and filed this action in state court on January 30, 2014, (D.E. # 1 at 2). The delay between the issuance of the mortgage and the filing of his action is therefore nearly eight years, but the statute of limitations for common law fraud claims in New York is six years, see Rosen v. Spanierman, 894 F.2d 28, 36 (2d Cir. 1990) ("The statute of limitations on fraud claims in New York is the longer of (1) six years from the date of the fraud, or (2) two years from the date the fraud was discovered or could have been discovered with the exercise of reasonable diligence." (citations omitted)). Even if Calizaire tried to argue that he only discovered the fraud when he realized that he could not make his payments, he says he made his "monthly payments for a couple of years," (Compl. ¶ 8), before falling behind, (id. ¶ 9). He would therefore have discovered the alleged fraud sometime around 2008, close to six years before filing this action.

[5] Presumably, Calizaire believes some section of the mortgage agreement has been violated by one or more of the defendants, but he never indicates which provisions are relevant. Even outside of the section of his complaint on breach of contract, he only appears to refer to other sources, such as "guidelines laid down by the Office of Comptroller of Currency." (Compl. ¶ 30.)

9

Calizaire refers to various sources in other sections of his complaint, such as "guidelines laid down by the Office of Comptroller of Currency," (Compl. ¶ 30), the Court finds no evidence that such sources have been incorporated into a contract between Calizaire and any of the defendants. As a result, Calizaire's claims for breach of contract are dismissed.

### D. Negligence

Calizaire also alleges negligence against all defendants, claiming they failed to uphold a duty of care to Calizaire by taking a series of steps that led to their initiation of foreclosure proceedings. (Compl. ¶¶ 39–44.) Calizaire points to defendants' alleged failure "to disclose to the Plaintiff that it was foreclosing on Plaintiff's subject property, treating other defendants as separate entity [sic] to confuse and mislead the Plaintiffs, preparing and recording false documents, and foreclosing on the subject property without having the legal authority and/or proper documentation to do so." (Id. ¶ 41.) In Calizaire's view, this list seems to comprise actionable, negligent deficiencies in how defendants "servic[ed] the loan." (Id.)

The "traditional common law elements of negligence [are] duty, breach, foreseeability, and causation." Tufariello v. Long Island R.R. Co., 458 F.3d 80, 87 (2d Cir. 2006). Yet "[w]here the only duty owed to the plaintiff arises from a valid contract, a negligence claim does not lie." Abraham v. Am. Home Mortgage Servicing, Inc., 947 F. Supp. 2d 222, 236 (E.D.N.Y. 2013) (quoting Banco Indus. de Venezuela, C.A. v. CDW Direct, L.L.C., 888 F. Supp. 2d 508, 512 (S.D.N.Y. 2012)). To the extent Calizaire's allegations derive from the purported failure of defendants to comply with a loan service agreement, a claim for negligence is unavailable to Calizaire as a matter of law. Although Calizaire alleges that the defendants, "acting as Plaintiff's lenders and servicers, owed a duty to exercise reasonable care and skill," (Compl. ¶ 40), that is not the case. "It is well settled under New York law that a lender is not in a fiduciary relationship with

a borrower, and thus a lender does not owe a borrower any special duties." Abraham, 947 F. Supp. 2d at 236. Similarly, "a mortgage servicer owes no duty of care to a borrower." Best v. Bank of Am., N.A., No. 14-CV-6546 (JG) (LB), 2015 WL 5124463, at *7 (E.D.N.Y. Sept. 1, 2015). Calizaire has therefore failed to plead the elements of negligence as to any defendant.

### E. Unjust Enrichment

Calizaire also alleges unjust enrichment against all defendants. (Compl. ¶¶ 51–53.) His allegations on this claim are especially vague and conclusory, stating only that the "Foreclosing Defendants [sic] have been unjustly enriched at the expense of the plaintiff." (Id. ¶ 52.) Under New York state law, a claim for unjust enrichment "requires proof that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc., 373 F.3d 296, 306 (2d Cir. 2004).

Here, Calizaire has failed to articulate any specific theory under which any of the defendants have been unjustly enriched at his expense, let alone how equity and good conscience support his case to recover from defendants. For example, Calizaire does not appear to deny receiving the loan, nor does he allege that he has paid back more than he owes; to the contrary, he acknowledges having paid less. (Compl. ¶ 9.) He therefore does not allege that any defendant has recovered more than the amount dictated by the terms of the agreement, which could in theory support a claim for unjust enrichment. See Tamir v. Bank of New York Mellon, No. 12-CV-4780 (DLI) (JO), 2013 WL 4522926, at *6 (E.D.N.Y. Aug. 27, 2013) (finding the absence of a threat of double recovery decisive in an unjust enrichment claim brought by a plaintiff who was bound by a mortgage and facing foreclosure).

Further, as noted above in connection with his negligence claim, Calizaire's relationship with the defendants appears to be defined by agreements incident to the mortgage. To the extent that is the case—and Calizaire does not clearly allege to the contrary—he "cannot state a plausible unjust enrichment claim because . . . a plaintiff cannot recover on an unjust enrichment theory when a contract [such as a mortgage] governs the relationship between the parties." Pollak v. Bank of Am., No. 12-CV-7726 (VB), 2013 WL 4799264, at *2–3 (S.D.N.Y. Aug. 27, 2013) (citing Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc., 448 F.3d 573, 587 (2d Cir. 2006)).

### F. Breach of the Covenant of Good Faith and Fair Dealing

Calizaire alleges that each of the defendants breached the covenant of good faith and fair dealing. (Compl. ¶¶ 54–58.) The basis for Calizaire's claim appears to be that the defendants failed to set aside foreclosure or provide him with a loan modification. (Id. ¶ 55.) He claims that "[d]efendants had a duty of good faith and fair dealing in the performance and enforcement of deed of trust, wherein the defendants had a discretionary power, affecting the rights of the plaintiff to be informed about the loan modification plans and modus operandi to set aside the foreclosure in cases pertaining to default, which was omitted by the defendants deliberately." (Id.)

It is well-settled that New York law "does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." Harris v. Provident Life & Accident Ins. Co., 310 F.3d 73, 81 (2d Cir. 2002). Courts in the Second Circuit have consistently dismissed claims for breach of the implied covenant of good faith as "redundant where the conduct allegedly violating the implied covenant of good faith is also the predicate for breach . . . of an express provision of the underlying contract." TVT Records & TVT Music, Inc. v. The Island Def Jam Music Grp., 244

F. Supp. 2d 262, 277 (S.D.N.Y. 2003); see also Alter v. Bogoricin, No. 97-CV-0662 (MBM), 1997 WL 691332, at *7 (S.D.N.Y. Nov. 6, 1997) ("[E]very court faced with a complaint brought under New York law and alleging both breach of contract and breach of a covenant of good faith and fair dealing has dismissed the latter claim as duplicative"). Consequently, a breach of the implied covenant of good faith claim can survive a motion to dismiss "only if it is based on allegations different than those underlying the accompanying breach of contract claim." Siradas v. Chase Lincoln First Bank, N.A., No. 98-CV-4028 (MBM), 1999 WL 787658, at *6 (S.D.N.Y. Sept. 30, 1999).

Here, Calizaire's claims for breach of contract and breach of the implied covenant of good faith and fair dealing are both premised on the same conduct: defendants' failure to set aside the foreclosure of the subject property and to provide Calizaire with a loan modification.[6] (Compare Compl. ¶ 36 (breach of contract claim), with id. ¶¶ 55–56 (breach of implied covenant of good faith and fair dealing claim).) As a result, Calizaire's claim for breach of the covenant of good faith and fair dealing is duplicative and must be dismissed.

### G. Breach of Fiduciary Duty

Calizaire also brings a breach of fiduciary duty claim against all defendants. (Compl. ¶¶ 59–68.) In the supporting allegations, Calizaire suggests that "Defendants owed Plaintiff a fiduciary duty because a relationship of trust and confidence existed between them." (Id. ¶ 63.) Calizaire argues that defendants breached this duty by failing to act toward him in "good faith," (id. ¶¶ 61, 64), and claims unspecified damages as a result, (id. ¶¶ 66, 68).

---

[6] Although New York law recognizes a duty to act in good faith in mortgage foreclosure proceedings, see N.Y. C.P.L.R. § 3408(f); Bank of New York v. Castillo, 991 N.Y.S.2d 446, 448 (App. Div. 2d Dep't 2014), this is not a mortgage foreclosure action and there is no apparent basis for any extra-contractual duties owed by defendants to Calizaire.

"To state a claim for breach of fiduciary duty under New York law, a plaintiff must allege '(1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct.'" Mosdos Chofetz Chaim, Inc. v. RBS Citizens, N.A., 14 F. Supp. 3d 191, 206 (S.D.N.Y. 2014) (quoting Varveris v. Zacharakos, 973 N.Y.S.2d 774, 775 (App. Div. 2d Dep't 2013)). "[T]he legal relationship between a borrower and a bank is a debtor-creditor relationship that in and of itself does not create a fiduciary relationship," Scott v. Dime Sav. Bank of New York, FSB, 886 F. Supp. 1073, 1078 (S.D.N.Y. 1995) aff'd, 101 F.3d 107 (2d Cir. 1996), but "a broker may take on a fiduciary duty by performing tasks and/or taking on obligations beyond that of an independent broker or traditional middleman," Grimes v. Fremont Gen. Corp., 933 F. Supp. 2d 584, 609 (S.D.N.Y. 2013).

As a general matter, "[t]he core of a fiduciary relationship is a higher level of trust than normally present in the marketplace between those involved in arm's length business transactions." Faith Assembly v. Titledge of N.Y. Abstract, LLC, 961 N.Y.S.2d 542, 553 (App. Div. 2d Dep't 2013) (internal quotation marks omitted). Calizaire has not alleged, and there is nothing in the record to suggest, that his relationship with any of the defendants featured a "higher level of trust than normally present." Id. Accordingly, Calizaire has not established that any of the defendants owed him a fiduciary duty, so his claim for breach of fiduciary duty is dismissed.

## H. Intentional Infliction of Emotional Distress

Calizaire alleges that all of the defendants are liable to him for intentional infliction of emotional distress ("IIED"). (Compl. ¶¶ 82–88.) He claims that he has suffered "considerable . . . emotional distress," (id. ¶ 83), and that his "mental agony and stress" have "been detrimental to [his] health," (id. ¶ 84). He alleges that at least some of the actions of the defendants are

"extreme and outrageous." (Id. ¶ 86.) He also suggests some of the defendants' conduct was designed to inflict emotional distress upon him. (See Am. Compl. ¶ 19.)

In New York, "[t]he state law tort of intentional infliction of emotional distress has four elements: (1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." Bender v. City of New York, 78 F.3d 787, 790 (2d Cir. 1996). "The conduct must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" Conboy v. AT&T Corp., 241 F.3d 242, 258 (2d Cir. 2001) (quoting Stuto v. Fleishman, 164 F.3d 820, 827 (2d Cir. 1999)).

Between his original complaint and his amended complaint, Calizaire pleads each of the four elements, (see Compl. ¶¶ 82–88; Am. Compl. at 19), but his allegations do not identify the outrageous conduct engaged in by each of the defendants. As with his other claims, the underlying issue appears to be the foreclosure proceedings. (See Compl. ¶ 13; Am. Compl. at 19.) Deutsch Bank is the only defendant to have initiated a foreclosure proceeding against Calizaire, and therefore the conduct underlying Calizaire's emotional distress likely cannot be attributed to MERS or Ocwen. If that is correct, the IIED claims against both of those defendants must therefore fail.

If he is understood as raising an IIED claim against Deutsche Bank for foreclosing, none of the conduct alleged by Calizaire is sufficient to satisfy the elements of IIED. Debt collection or foreclosure—even when initiated improperly—will typically support an IIED claim only if accompanied by other "loathsome conduct." Assocs. First Capital v. Crabill, 51 A.D.3d 1186, 1188 (N.Y. App. Div. 3d Dep't 2008). In the context of debt collection, that can manifest as the aggressive pursuit of the debt using techniques that are "intended or likely to cause physical

illness." Long v. Beneficial Fin. Co. of New York, 39 A.D.2d 11, 13 (N.Y. App. Div. 4th Dep't 1972) (quoting Clark v. Assoc. Retail Credit Men of Washington, D.C., 105 F.2d 62, 67 (D.C. Cir. 1939)). Calizaire's complaint, in essence, is that Deutsch Bank has knowingly initiated foreclosure proceedings without the right to do so. This does not constitute the "outrageous conduct" necessary to support an IIED claim. See Stuto, 164 F.3d at 828 (noting that many cases accepting IIED claims involve "some combination of public humiliation, false accusations of criminal or heinous conduct, verbal abuse or harassment, physical threats, permanent loss of employment, or conduct contrary to public policy").

Additionally, Calizaire fails to plead the second element of an IIED claim sufficiently. He claims the defendants "fraudulently attempted to foreclose . . . with the specific intent of inflicting emotional distress on the Plaintiff, such that Plaintiff would be so emotionally distress[ed] and debilitated that he would be unable to exercise legal rights in the property." (Am. Compl. at 19.) This circular theory falls short of the Iqbal plausibility standard because, even on Calizaire's description, the underlying intent evinced by Deutsche Bank would be to assert a successful claim to the property, and initiating a foreclosure proceeding would accordingly be necessary whether or not doing so was expected to distress Calizaire.

Finally, although Calizaire describes experiencing emotional distress as a result of the foreclosure, the degree of severity necessary to make out an IIED claim is quite significant, and Calizaire has not climbed over the threshold. Grimes, 933 F. Supp. 2d at 612 ("[C]ourts have generally found that an IIED claim will not lie in a case . . . where a debt collection effort or a foreclosure results in inconvenience, frustration, embarrassment, and stress, but not serious mental anguish."). Calizaire is no doubt distressed, but he has alleged no specific facts to explain why he has endured "serious mental anguish" above and beyond the legitimate stresses typically incident

to a foreclosure. Id. Calizaire's IIED claims therefore fail as to all defendants, and are dismissed accordingly.

## I. Wrongful Foreclosure

Finally, Calizaire contends that the foreclosure was wrongful because "the Foreclosing Defendants engaged in a fraudulent foreclosure of the Subject Property in which the Foreclosing Defendants did not have the legal authority to foreclose." (Compl. ¶ 49.) In particular, he contends that the mortgage note was improperly transferred and defendants did not fulfill their legal obligations to Calizaire because they failed to inform him of other options to avoid foreclosure. (Id. ¶¶ 46–48.) However, Calizaire has not alleged that there has been an entry of judgment of foreclosure on the subject property or a sale; rather, records from the New York Supreme Court indicate that foreclosure proceedings are still pending. Without a "factual basis supporting an allegation of foreclosure, a cause of action for wrongful foreclose cannot survive." Pawaroo v. Countrywide Bank, No. 09-CV-2924 (ARR) (SMG), 2010 WL 1048822, at *7 (E.D.N.Y. Mar. 18, 2010); see also Lezynski v. Kasprzyk, 119 N.Y.S. 2d 904, 905 (App. Div. 4th Dep't 1953) ("The alleged wrong was completed upon the entry of the judgment of foreclosure and sale on August 28, 1933 and the cause of action [for wrongful foreclosure], if any, accrued at that time."). Accordingly, Calizaire's wrongful foreclosure claim is dismissed.

## CONCLUSION

For the foregoing reasons, each of Calizaire's claims requires the Court to abstain from exercising jurisdiction or fails to state a claim. Defendants' motion to dismiss is therefore granted. However, in light of Calizaire's pro se status, the Court grants him leave to amend. See Branum v. Clark, 927 F.2d 698, 705 (2d Cir. 1991) ("A pro se complaint is to be read liberally. Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."). Calizaire has thirty (30) days from the date of this Memorandum and Order to file an amended complaint rehabilitating his eight claims that are not subject to Younger abstention: fraud, breach of contract, negligence, unjust enrichment, breach of the covenant of good faith and fair dealing, breach of fiduciary duty, IIED, and wrongful foreclosure. The amended complaint must recite sufficient facts to make Calizaire's allegations plausible, and it will replace the original and first amended complaints.

SO ORDERED.

Dated: March 6, 2017
Brooklyn, New York

s/CBA
Carol Bagley Amon
United States District Judge